# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: July 9, 2018
Date Decided:  July 13, 2018

David E. Ross, Esquire
Bradley R. Aronstam, Esquire
Garrett B. Moritz, Esquire
S. Michael Sirkin, Esquire
Roger S. Stronach, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Myron T. Steele, Esquire
Donald J. Wolfe, Jr., Esquire
Matthew E. Fischer, Esquire
Michael A. Pittenger, Esquire
Jacqueline A. Rogers, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899

RE:  *In re CBS Corporation Litigation*
Consol. C.A. No. 2018-0342-AGB

Dear Counsel:

This letter constitutes the court's ruling on the motion of National Amusements, Inc. ("National Amusements" or "NAI"), NAI Entertainment Holdings LLC, Sumner M. Redstone, and Shari Redstone (collectively, the "NAI Parties") to compel CBS Corporation and eleven members of its board of directors not affiliated with NAI (collectively, the "CBS Parties") to produce certain documents that are expected to be withheld on privilege grounds.[1]  For the reasons explained below, the motion is granted in part and denied in part.

---

[1] Dkt. 106.

## I.  Background

CBS Corporation and Viacom Inc. were part of one company before they were split into standalone entities in 2005.  CBS has two classes of stock, both of which are publicly traded on the New York Stock Exchange.  The Class A common stock has voting power; the Class B common stock does not.  Ms. Redstone, through her control of NAI, effectively controls approximately 79.7% of the voting power of CBS.  In contrast to its voting power, NAI owns only approximately 10.3% of the economic stake in CBS.

Since 2006, the law firm of Wachtell, Lipton, Rosen & Katz has served as outside counsel to CBS and, from time to time, served as counsel to the nominating and governance committee and the compensation committee of the CBS board of directors (the "Board").[2]  Martin Lipton, a founding partner of Wachtell Lipton, has been the primary partner handling the CBS representation.

Wachtell Lipton has represented CBS in connection with a range of matters, some of which have implicated the relationship between CBS and its controlling stockholder and some of which have not.[3]  With respect to the latter category, for example, Wachtell Lipton represented CBS in the divestiture of CBS Radio in 2017,

---

[2] Affidavit of Martin Lipton ¶ 3 (Dkt. 118).

[3] Lipton Aff. ¶¶ 4-5.

in the split-off of its billboard advertising business in 2014, and in various "typical corporate finance matters as well as disclosure and SEC filing questions that arise in the ordinary course."[4]  With respect to the former category, Mr. Lipton described Wachtell Lipton's role, in relevant part, as follows:

> Wachtell Lipton has also advised CBS regarding the company's control relationship with National Amusements and individuals who control or could potentially control National Amusements, namely, Sumner Redstone and Shari Redstone.  The topics of that advice have included the options available to the company vis-à-vis its controller as a legal matter, encompassing both National Amusements' obligations to the company and the company's other stockholders as a matter of Delaware law and the options available to CBS in dealing with its controller under Delaware law and the company's bylaws and certificate of incorporation.  There were any number of times over the years when the company sought legal advice arising from concern that National Amusements and its principals might take actions that were not in the best interests of CBS and its stockholders and that would go against the long-standing and public representations regarding CBS's independent governance under an independent board of directors.[5]

On September 27, 2016, NAI's outside counsel (Cleary Gottlieb Steen & Hamilton LLP) sent Wachtell Lipton a draft of a letter from NAI requesting that CBS consider a potential combination with Viacom.[6]  The draft letter stated: "In light of [NAI's] controlling interest in each of [CBS] and [Viacom], we expect that

---

[4] Lipton Aff. ¶ 4.

[5] Lipton Aff. ¶ 5.

[6] Affidavit of Roger S. Stronach Ex. 2 (Dkt. 118).

3

each company will establish a special committee to evaluate, explore, consider and, if they determine advisable, negotiate a potential combination[.]"[7]

On September 29, 2016, the Board adopted resolutions authorizing a special committee of independent directors (the "2016 Special Committee") "to act as a disinterested body for the purpose of considering, negotiating and overseeing the Potential Transaction, including if appropriate recommending in favor of or against the Potential Transaction to the Board and stockholders (the 'Special Committee Matters')."[8]  The Board resolutions included a broad delegation of authority to the 2016 Special Committee:

> *[T]he Committee shall have the full powers, authorities, duties, rights and responsibilities of the Board with respect to matters relating to, or arising from, any Special Committee Matters* including, without limitation, that the Committee shall be authorized and empowered to (a) take such actions as it may deem necessary or desirable to consider, negotiate and oversee the Potential Transaction, including with respect to making recommendations to the Board and stockholders with respect to the Potential Transaction to do or not to do the Potential Transaction, (b) determine whether any such Special Committee Matters are in the best interest of the Corporation and its stockholders and to report its recommendation to the Board and/or the stockholders of the Corporation, and (c) assist in the preparation and filing of any

---

[7] Stronach Aff. Ex. 2 at 2.  This text was removed from the final version of the letter sent on September 29, 2016.  The final version instead stated: "We therefore request the board of each company take the appropriate steps to consider the proposed transaction."  *Id.* Ex. 3 at CBS00000925.

[8] Stronach Aff. Ex. 7 at CBS00000231.

documents as may be required with respect to matters relating to, or arising from, any such Special Committee Matters[.][9]

The Board resolutions authorizing the 2016 Special Committee and the charter for the committee that the Board approved both required that the directors, officers, and agents of CBS cooperate with it so that it could carry out its duties:

> [T]he directors, officers, employees and agents of the Corporation . . . hereby are authorized and directed to cooperate fully with the Committee and its advisors to facilitate the matters within the scope of its authorities and responsibilities, including to provide the Committee with business, financial and other information as reasonably requested by the Committee[.][10]

* * * * *

> All officers, employees and agents of the Corporation shall supply any information and take all appropriate actions as reasonably requested by the Committee or its representatives and to otherwise assist the Committee in carrying out its duties pursuant to this Charter.[11]

The work of the 2016 Special Committee apparently ended in December 2016.[12]

By early January 2018, Ms. Redstone again formally approached the boards of CBS and Viacom and pressed for a combination of the two companies.[13] On

---

[9] *Id.* (emphasis added).

[10] Stronach Aff. Ex. 7 at CBS00000232 (Board resolutions).

[11] *Id.* at CBS00000234 (charter).

[12] Tr. 56 (July 9, 2018); *see also* Am. Compl. ¶ 47 (referring to December 12, 2016 as the date "merger talks were called off").

[13] Am. Compl. ¶ 49 (Dkt. 42).

February 1, 2018, the Board adopted resolutions to form a second special committee (the "2018 Special Committee") "for the purpose of considering, negotiating and overseeing the potential combination" of CBS and Viacom.[14] The delegation of authority to the 2018 Special Committee is substantively the same as the delegation of authority to the 2016 Special Committee.[15] The Board resolutions authorizing, and the charter for, the 2018 Special Committee also contain identical directives requiring the full cooperation of directors, officers, employees, and agents of CBS as were adopted for the 2016 Special Committee.[16]

The 2018 Special Committee remains active.[17] I refer to the 2016 and 2018 Special Committees hereafter collectively as the "Special Committees."

On or about May 13, 2018, the 2018 Special Committee determined that a CBS/Viacom merger is not in the best interests of CBS stockholders, other than NAI.[18] The 2018 Special Committee also recommended that the Board consider the issuance of a dividend of Class A voting stock to all holders of Class A voting and Class B non-voting stock (the "Stock Dividend").[19] The Stock Dividend, the

---

[14] Stronach Aff. Ex. 8 at CBS00000111.

[15] Compare Stronach Aff. Ex. 7 at CBS00000231 with Ex. 8 at CBS00000108-109.

[16] Compare Stronach Aff. Ex. 7 at CBS00000232, 34 with Ex. 8 at CBS0000109, 111.

[17] Tr. 93 (July 9, 2018).

[18] Am. Compl. ¶ 67.

[19] Am. Compl. ¶ 75.

implementation of which is subject to judicial approval,[20] would have the effect of reducing NAI's voting power from approximately 80% to 20% if implemented, but would not dilute the economic ownership interests of any CBS stockholder, including NAI.[21]

On May 16, the day before a Board meeting requested by the 2018 Special Committee, NAI executed and delivered written consents to amend CBS's bylaws to, among other things, require approval by 90% of the directors then in office at two separate meetings held at least twenty business days apart in order to declare a dividend (the "90% Bylaw"). On May 17, the Board voted to approve the Stock Dividend by a vote of 11-3.[22] NAI's three designees to the fourteen-person Board— Ms. Redstone, David Andelman, and Robert Klieger (the "NAI Affiliated Directors")—cast the only dissenting votes.[23]

This litigation commenced on May 14, 2018. An expedited trial to adjudicate the validity of the Stock Dividend and 90% Bylaw, among other matters, is scheduled to commence on October 3, 2018.

---

[20] *CBS Corp. v. Nat'l Amusements, Inc.*, 2018 WL 2263385, at *2 (Del. Ch. May 17, 2018).

[21] Am. Compl. ¶ 7.

[22] Am. Compl. ¶¶ 9-10, 93.

[23] *Id.*

## II.    The Parties' Contentions

In its motion, the NAI Parties seek to compel the CBS Parties to produce two categories "of privileged materials involving communications with CBS Counsel from before May 14, 2018:"

1.  Communications with and between CBS Counsel and any officer or director of CBS.

2.  Communications between the (i) members of the special committees of the CBS Board formed to consider a potential CBS/Viacom transaction or committee counsel, on the one hand, and (ii) CBS Counsel, on the other hand.[24]

The term "CBS Counsel" is defined as "in-house and outside counsel to CBS and its board,"[25] which means, for purposes of this motion, in-house counsel and Wachtell Lipton.[26]  The NAI Parties contend that the NAI Affiliated Directors are entitled to the above two categories of documents on the theory that they have a right as directors of a Delaware corporation to unfettered access to any legal advice rendered to CBS or other members of its Board as joint clients of CBS Counsel.

The CBS Parties advance essentially four arguments in response.  First, they contend that the NAI Parties have no right to privileged communications concerning the "use or abuse of NAI control" *from 2005 forward* because NAI and its designees

---

[24] Mot. to Compel ¶ 6.

[25] *Id.* ¶ 2.

[26] Tr. 5-6 (July 9, 2018).

on the Board would have been adverse to CBS on this issue "from the get-go" and thus "could not have reasonably expected that they were represented by CBS's outside counsel as to these issues."[27]

Second, focusing on a shorter time period beginning in September 2016, the CBS Parties contend that "the NAI Parties have no right to CBS's privileged documents concerning the CBS/Viacom merger proposals, whether emanating from the Special Committee or not" because "[a]dversity on that subject was obvious from the moment in 2016 when NAI first placed itself across the negotiating table from CBS."[28]

Third, in a narrower variation of its second argument, the CBS Parties contend that the "NAI Parties have no right to privileged documents related to the Special Committees' processes," meaning "privileged communications (1) between the Special Committee and CBS's inside and outside counsel and (2) between CBS management and CBS's counsel in aid of the Special Committee process."[29] According to the CBS Parties, these communications are protected by the Special

---

[27] Tr. 66 (July 9, 2018); Opp'n to Mot. to Compel ¶ 8.

[28] Opp'n to Mot. to Compel ¶ 9.

[29] *Id.* ¶ 10.

Committees' privilege because the Special Committees were "explicitly authorized to work with and direct 'directors, officers, employees and agents'" of CBS.[30]

Finally, the CBS Parties contend that "even if certain NAI Affiliated Directors were entitled to access CBS's privileged documents in their capacities as directors, the other NAI Parties—including NAI and its counsel—have no right to such information [because] NAI lacks the contractual designation rights required to access such information."[31]

## III. Analysis

The key legal principles relevant to this motion were explained cogently in Vice Chancellor Laster's decision in *Kalisman v. Friedman*.[32] He first summarized a director's general right of access to privileged board information under Delaware law, as follows:

> A director's right to information is essentially unfettered in nature. The right includes equal access to board information. A company cannot pick and choose which directors will receive which information.
>
> The director's right to information extends to privileged material. As a general rule, a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure. The rationale for this rule is that all directors are responsible for the proper management of the corporation, and thus, should be

---

[30] *Id.* ¶¶ 35-36.

[31] *Id.* ¶ 11.

[32] 2013 WL 1668205 (Del. Ch. Apr. 17, 2013).

treated as a joint client when legal advice is rendered to the corporation through one of its officers or directors.[33]

Vice Chancellor Laster then identified the following "three recognized limitations on a director's ability to access privileged information":

> First, the director's right can be diminished by an *ex ante* agreement among the contracting parties . . .

> Second, a board can act pursuant to 8 *Del. C.* § 141(c) and openly with the knowledge of the excluded director to appoint a special committee. A committee would be free to retain separate legal counsel, and its communications with that counsel would be properly protected, at least to the extent necessary for the committee's ongoing work, such as conducting a special committee investigation or negotiating an interested transaction . . .

> Third, a board or a committee can withhold privileged information once sufficient adversity exists between the director and the corporation such that the director could no longer have a reasonable expectation that he was a client of the board's counsel.[34]

With respect to the third category, *Kalisman* cites *SBC Interactive, Inc. v. Corporate Media Partners*, where Justice Jacobs, writing as a Vice Chancellor, explained that "appropriate governance procedures" must be employed in this situation:

> Normally a director will be entitled to equal access to legal advice furnished to the other board members, because normally the interests of all directors are identical. Where, however, a director's interests come into conflict with the interests of the corporation on a given issue,

---

[33] *Id.* at *3-4 (internal quotations and citations omitted).

[34] *Id.* at *4–5.

the board is entitled to deliberate—and receive legal advice—in confidence and without having to share that advice with the director whose interests are adverse, *so long as the board employs appropriate governance procedures*.[35]

The example of "appropriate governance procedures" discussed in *SBC Interactive* was to openly form a special committee, which would ensure that the director involved had no reasonable expectation that he was a client of the board's counsel:

> [I]f the board, in the presence of the plaintiff's designee, had openly (*i.e.*, with the disfavored director's knowledge) voted to establish a special committee to consider this question in confidence, it could properly have done so, and any advice rendered by legal counsel to that committee would have been protected by the attorney-client privilege. Had that process been employed, the plaintiff's director designee would have had no reasonable expectation that he was a client of the board's counsel on a par with the remaining directors.[36]

Referencing his prior decision in *Moore Business Forms, Inc. v. Cordant Holdings Corp.*,[37] Justice Jacobs further explained in *SBC Interactive* that concealing the existence of adversity may create a reasonable (although mistaken) expectation on the part of a director that he was being treated identically with the other directors thus entitling that director to access the privileged information provided to the other directors:

> To express it differently, although in *Moore* the interests of the plaintiff's director designee and the remaining directors were in fact

---

[35] 1997 WL 770715, at *6 (Del. Ch. Dec. 9, 1997) (emphasis added).

[36] *Id.* at *6 (footnote omitted).

[37] 1996 WL 307444 (Del. Ch. June 4, 1996).

adverse, the remaining directors and the corporation's management deliberately concealed the adversity until a time of their choosing, and created a reasonable expectation (and reliance) on the director designee's part that the "normal" attorney-client relationship existing in the absence of adverse interests would prevail.   In those circumstances, the Court held that the plaintiff was a "client" of the board's counsel and that the attorney-client privilege could not be asserted against it.[38]

When the corporation seeks to assert privilege against a director, the corporation "has the burden to establish when sufficient adversity existed."[39]

\* \* \* \* \*

The NAI Parties ask the court to apply the legal principles summarized above in connection with its motion at the outset of discovery in an expedited case. Although this court has recognized the benefit of doing so in certain circumstances, it is problematic to do so here for the eleven-year period predating the formation of the 2016 Special Committee.  This is because the record is too undeveloped to make informed judgments in the abstract about (i) when moments of adversity may have arisen between CBS and the NAI Affiliated Directors concerning a given issue during this period and, if they did, (ii) whether the NAI Affiliated Directors were (or reasonably should have been) aware of the existence of such adversity such that they could not have had a reasonable expectation that they were clients of CBS Counsel

---

[38] 1997 WL 770715, at \*6.

[39] *In re Oxbow Carbon LLC*, 2017 WL 898380, at \*1 (Del. Ch., Mar. 07, 2017) (ORDER).

13

at a given time. Accordingly, the court declines to rule on the motion with respect to this time period. Instead, the parties should do what litigants normally do during discovery: the party wishing to challenge the assertion of privilege should do so after the assertion actually has been made so that the challenge can be considered in a more specific factual context.

Turning to the period from when the 2016 Special Committee was formed in September 2016 until May 14, 2018, a sufficient record exists in my view for the court to provide guidance on the two categories of information the NAI Parties seek for that time period. I begin with the second category. To repeat, that category seeks "communications between the (i) members of the special committees of the CBS board formed to consider a potential CBS/Viacom transaction or committee counsel, on the one hand, and (ii) CBS Counsel, on the other hand."[40] In my opinion, the NAI Affiliated Directors (and thus the NAI Parties) are not entitled to this information.

In asking the Board to consider a potential combination of CBS and Viacom, the NAI Parties placed themselves across the negotiating table from CBS. As such, the NAI Parties created sufficient adversity with CBS such that the NAI Affiliated Directors could not—to use the court's words from *Kalisman*—"have a reasonable

---

[40] Mot. to Compel ¶ 6.

expectation that [they were] a client of the *board's counsel or the Special Committee's counsel* with respect to" matters delegated to the Special Committees.[41] In forming a Special Committee in 2016 and again in 2018 to consider a potential combination, CBS employed appropriate governance procedures that openly put the NAI Affiliated Directors on notice that they would be segregated from the CBS side of the deliberations, including privileged information relating thereto. At that point, the Board—operating through the Special Committees—was "entitled to deliberate—and receive legal advice—in confidence and without having to share that advice with the director whose interests are adverse[.]"[42]

Consistent with the foregoing, the NAI Parties do not take issue with being segregated from advice provided by counsel that the Special Committees separately retained (White & Case LLP and Weil, Gotshal & Manges LLP). Indeed, the NAI Parties concede that adversity was "manifest" between the NAI Affiliated Directors and the Special Committees and their separate counsel.[43] The NAI Parties nevertheless assert that the NAI Affiliated Directors are entitled to access communications between CBS Counsel, on the one hand, and the Special Committees and/or their separate counsel, on the other hand. Although no precedent

---

[41] *Kalisman*, 2013 WL 1668205, at *5 (emphasis added).

[42] *See SBC Interactive*, 1997 WL 770715, at *6.

[43] NAI Parties' Reply in Supp. of Mot. to Compel ¶ 16 (Dkt. 127).

has been cited analyzing this specific issue, I am not persuaded by the NAI Parties' argument and believe that the adversity should have been equally manifest to the NAI Affiliated Directors in this situation as well.

To start, it is logical to expect that a special committee charged with evaluating a proposed transaction (including matters "relating to" and "arising from" such proposed transaction) may wish or may need to confer with the corporation's in-house lawyers and outside counsel to discharge their duties in an informed and responsible manner. That appears to be particularly true here, where Wachtell Lipton possessed extensive historical knowledge about CBS and its relationship with NAI from having represented CBS virtually from the date it became a separate public company.

Apart from being logical, none of this could be a surprise to the NAI Affiliated Directors because, as discussed above, the authorizing resolutions and charters that the Board approved in forming both Special Committees specifically directed "that the directors, officers, employees and *agents* of the Corporation" must cooperate fully with the Special Committees and their advisors so that they could carry out their duties.[44] It would make no sense to direct these persons, which plainly include outside counsel as an "agent" of CBS, to cooperate fully with the Special

---

[44] Stronach Aff. Ex. 7, at CBS00000232; Ex. 8, at CBS00000109 (emphasis added).

Committees only to expose to an adverse party what they shared with the Special Committees.

In short, given the adversity of interests that prompted the creation of the Special Committees and given the mandate they were provided as part of a transparent process, the NAI Affiliated Directors could not have had a reasonable expectation that they were clients of CBS Counsel insofar as CBS Counsel was acting in aid of the process undertaken by either of the Special Committees. To reach the opposite conclusion would undermine the legitimate expectation that the Special Committees' deliberative processes would be held in confidence and would not be shared with designees of the party whose adverse interests necessitated their formation in the first place. Accordingly, the NAI Parties' request to compel the second category of information is denied.

The first category of information the NAI Parties seek is "communications with and between CBS Counsel and any officer or director of CBS."[45] My reasoning with respect to the second category dictates my disposition of this request as well. That is, insofar as the first category seeks any communications between CBS Counsel and an officer or director of CBS that was undertaken in aid of the process of either of the Special Committees, the motion to compel will be denied for the

---

[45] Mot. to Compel ¶ 6.

reasons discussed previously. Otherwise, the motion will be granted because no factual basis has been identified to support the conclusion that the NAI Affiliated Directors were made aware (or reasonably should have been aware) that CBS Counsel was not representing them jointly with the other CBS directors with respect to any matter *other than the matters falling within the purview of the Special Committees for which CBS Counsel provided assistance.*

Finally, I reject the CBS Parties' request that access to any CBS privileged information that may be provided as a result of this ruling be limited to the NAI Affiliated Directors and not shared with the NAI Parties or their counsel. Apart from the fact that no clear precedent has been cited supporting the imposition of such a condition,[46] practical considerations dictate this conclusion. Given that Ms. Redstone is one of the NAI Affiliated Directors (as well as one of the NAI Parties) and, by all accounts, is the key decision-maker for NAI, it is simply not realistic or practical to believe that any information to which she may become privy as a result of this ruling could be segregated from her thought process as an adversary of CBS

---

[46] The weight of precedent seems to support the opposite conclusion as a general matter. *See Kalisman*, 2013 WL at *6 ("When a director serves as the designee of a stockholder on the board, and when it is understood that the director acts as the stockholder's representative, then the stockholder is generally entitled to the same information as the director.") (citing *Moore*, 1996 WL 307444, at *4; *KLM v. Checchi*, 1997 WL 525861, at *2-3 (Del. Ch. July 23, 1997); *AOC Ltd. P'ship v. Horsham Corp.*, 1992 WL 97720, at *1 (Del. Ch. May 5, 1992)).

in this case.  That said, all of the NAI Parties and the NAI Affiliated Directors are bound by the confidentiality order governing the use of discovery material in this action.[47]

## IV.    Conclusion

For the reasons explained above, the NAI Parties' motion to compel is granted in part and denied in part.  The parties are directed to confer and submit a form of order implementing this decision within two business days.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

---

[47] Dkt. 89 (C.A. No. 2018-0342-AGB).